UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

_____
                                        )
In re:                                  )
                                        )
PATRICIA MARCELLO &          CH: 7      )    2:14-bk-12221-GBN
ANTHONY MARCUS ANDERSON                 )
                                        )
CWB HOLDINGS, LLC vs ANTHONY MARCUS     )    ADV: 2-14-00927
ANDERSON & PATRICIA MARCELLO ANDERSON   )
                                        )
ORAL ARGUMENT ON PLAINTIFF'S MOTION FOR )
PARTIAL SUMMARY JUDGMENT REGARDING      )
SECTION 523(A)(6) CLAIM                 )
_____ )

                          U.S. Bankruptcy Court
                          230 N. First Avenue, Suite 101
                          Phoenix, AZ 85003-1706

                          November 4, 2015
                          10:30 a.m.

          BEFORE THE HONORABLE GEORGE B. NIELSEN, Judge

APPEARANCES:

For CWB Holdings, LLC:        Brian J. Cosper
                              FIDELITY NATIONAL LAW GROUP
                              2355 E. Camelback Rd., #900
                              Phoenix, AZ  85016

For the Debtors:              Adam E. Hauf
                              HAUF LAW, PLC
                              4225 W. Glendale Avenue
                              Suite A-104
                              Phoenix, AZ  85051

For the Debtors:              Charles Leftwich, Jr.
                              LEFTWICH LAW
                              3610 N. 44th St., #140
                              Phoenix, AZ  85018

Proceedings recorded by electronic sound technician, Renee
Bryant; transcript produced by AVTranz.

AVTranz
www.avtranz.com · (800) 257-0885

1          THE CLERK:  All rise.

2          THE COURT:  Be seated.

3          THE CLERK:  In the case 14-12221, Patricia Marcello

4  and Anthony Anderson.

5          THE COURT:  We'll take appearances.

6          MR. COSPER:  Good morning, Your Honor.  Brian Cosper

7  on behalf of the Plaintiff, CWB Holdings, LLC and I'm here with

8  my client, Caroline Gray.

9          MR. HAUF:  Good morning, Your Honor.  Adam Hauf on

10  behalf of the Defendants, Patricia and Anthony Anderson.  I

11  have my co-counsel, Charles Leftwich with me.

12          THE COURT:  All right.  And of course we're here on

13  the Plaintiff's motion for summary judgment which I suspect is

14  still at issue between these parties.  I've looked at those

15  papers.  I have a preliminary inclination to share with

16  everyone and then I'll listen with a great deal of interest to

17  counsel's presentations this morning.

18          On a -- what I call a slander of title cause of

19  action based on the statutory requirement that controls the

20  appropriate use of notices of clouding title, I would think

21  that to an ordinary reasonable person they would understand

22  that after their claims of a contract have been rejected by the

23  State Court and after they were ordered by the State Court to

24  withdraw the lis pendens, I would think that what a reasonable

25  person would do would be to do just that, comply with the

1  judge's order or file a motion for a stay or an injunction to

2  avoid that legal duty.  That wasn't done here, as I understand

3  it.  And I would think further that a reasonable person would

4  understand that keeping the lis pendens in place after a court

5  has said it's improper and after a court has said to remove it

6  would -- that that reasonable person would understand they're

7  causing harm to the other side.  That was the conclusion of the

8  State Court judge and -- as I understand it, and quite frankly

9  as I look at these matters, it seems to me to be the same

10  circumstance.

11       I have one concern that I'm thinking about to avoid a

12  complete ruling granting the motion for summary judgment and

13  that's on the scienter requirement, the knowledge requirement.

14  I am troubled by this provision in the statement of facts, the

15  Debtors' statement of fact number 6, I think I recall it is.

16  That indicates that they relied on the advice of counsel not

17  doing what the Court said they're obligated to do.

18       And I would think it would be odd that this precise

19  issue wasn't raised in the State Court.  I don't see any

20  indication that it was, but now it's being raised here.  I'm

21  frankly wondering if, given that dispute -- we know that we

22  don't weigh evidence at the summary judgment level, we just

23  look to see if there's a dispute of material fact.  If there

24  was a reasonable reliance on the advice of counsel in this case

25  that could well constitute a dispute of material fact here,

1  because there are courts that recognize that could be, under

2  the proper circumstances, that could be an appropriate defense

3  to this matter.

4          So my preliminary view, which I'm sharing with you

5  before I hear from counsel, but based just on the pleadings is

6  this.  I'm frankly thinking about a ruling of a partial summary

7  judgment here finding that the Plaintiff in its papers, based

8  on the record here, the undisputed record, as established by a

9  preponderance of the evidence most of the elements of

10  523(a)(6). The single remaining issue would be scienter, which

11  would require not just the Debtors to file a declaration that,

12  gosh, they relied on counsel, but I would expect if the Debtors

13  want to go forward with this defense, I would frankly expect

14  them to waive the attorney-client privilege and it would be

15  their burden to bring in the attorney, their former attorney

16  who would presumably agree with them, that this is exactly what

17  happened.  That's what I'm thinking of doing in this case, but

18  all of this said without hearing from counsel.  Let's fix that

19  right now, Mr. Cosper.

20          MR. COSPER:  Thank you, Your Honor.  Based on the

21  Court's statement right now, I suppose it makes sense for me to

22  focus probably exclusively on that scienter element.

23          THE COURT:  Bingo.

24          MR. COSPER:  And I think that that comes into play --

25  frankly I don't think that it needs to come into play at all

1  and the reason is, the argument was not raised in the State

2  Court.  It seems to me that it would have been a defense to

3  this particular liability.  Remember 33-420(c) requires proof

4  that the Debtor had specific knowledge that the document was

5  groundless, number one, and number two, that the Debtors

6  willfully refused to release that document in spite of specific

7  knowledge of its groundlessness.  And what that means, at least

8  for purposes of the knowledge element that is -- that arises

9  under 523(a)(6) is -- well, let me back up.  The Arizona Court

10 of Appeals in the SWC Baseline case has clarified for us what

11 exactly is meant by a groundless recorded document.  And in

12 that case they cite and earlier case, I believe it's Evergreen

13 or I think that's the name, where the Court equates groundless

14 with frivolous and frivolous means that it's unsupported by any

15 credible evidence and it lacks any arguable basis whatsoever.

16      So what we have here is a successful claim in State

17 Court that proves that the Andersons knew that this lis pendens

18 was frivolous, it's unsupported by any credible evidence and it

19 lacks any arguable basis at all.  The judgment establishes

20 preclusively that they had that knowledge.  They can't get

21 around that fact now by arguing that they relied on their

22 counsel's advice.  The knowledge element's already there.  It's

23 established by the judgment.

24      The fact that they didn't make that argument in the

25 State Court case, I think that that -- they bear the

1  responsibility for that failure and we've cited some cases in

2  our papers that say a tactical decision or the failure of a

3  party to properly litigate its case in a State Court does not

4  provide a defense in a subsequent bankruptcy proceeding.  The

5  party's still bound by the outcome of that judgment and that's

6  exactly what we have here.  If they wanted to make the argument

7  that their knowledge was based upon a representation of their

8  counsel or advice of their counsel, they should have made it

9  and their failure to do so binds them in this particular

10 proceeding.  I also think it's important that the -- when this

11 case was on appeal in the State Court, the State Court affirmed

12 every decision of the trial court proceeding.  It said

13 basically unequivocally that there was no basis for the

14 Andersons to make any claim, whatsoever, to the property.  And

15 a finding of liability under subsection C of A.R.S. 33-420,

16 requires knowledge of that groundlessness and they had that.

17         It's not -- they can't hide behind their counsel's

18 advice now and quite frankly, Your Honor, the affidavit they

19 presented is -- I know the Court has to consider it at the

20 summary judgment stage, but it's undermined by all the facts in

21 the underlying case.  They didn't raise that argument.  It

22 seems awful self-serving right now to hide behind the advice of

23 counsel to defeat one element of a claim for

24 nondischargeability under (a)(6).

25         THE COURT:  Are you suggesting that I weigh that

1  affidavit's evidentiary value and find it wanting?

2          MR. COSPER:  Well, I think that that would be one

3  appropriate course to take.  I also think --

4          THE COURT:  Is that what I do at summary judgment or

5  is that a reversible error?

6          MR. COSPER:  Well, I think it depends.  Obviously,

7  the Court is not supposed to weigh evidence at the summary

8  judgment stage, absolutely that's the truth, but --

9          THE COURT:  Yep.

10          MR. COSPER:  -- but I think that there are -- I think

11  there are cases out there and I don't think we cited them in

12  our papers, I could brief the issue if necessary, but that a

13  self-serving affidavit doesn't necessarily carry the day on

14  summary judgment.  It doesn't necessarily present any

15  evidence -- actually evidence to defeat, in this case, the

16  conclusively established elements of the claim under 420(c).

17          THE COURT:  What would the Defendants' claim look

18  like if it was properly raised?  What would their evidence look

19  like, do you think?

20          MR. COSPER:  At this stage?

21          THE COURT:  Yep.

22          MR. COSPER:  I suppose something further.  Well, I

23  think we need to go back first and ask whether that even

24  matters and I think it does not, because I think that the State

25  Court judgment establishes their knowledge.  And when we look

1   at what the requirements are for willful and malicious injury

2   under the Bankruptcy Code there is a subject of intent element,

3   absolutely, but that subjective intent can be proven by

4   circumstantial evidence.  And what we have here, we know that

5   they recorded this document with knowledge of its

6   groundlessness.  They were defeated at every stage of the State

7   Court litigation on summary judgment.  What that means, of

8   course, is that there was no credible evidence to support their

9   claim at any stage of the State Court case.  If you record a

10  document that you know is groundless, there's no conclusion to

11  reach other than that you did so with the intent of harming

12  somebody.  And in this case, that somebody was my client; she

13  suffered significant damages as a result of this.

14          On top of that, we have their repeated refusals to

15  release this particular document despite a court judgment.  I

16  don't think that counsel's advice justifies disobeying that

17  court judgment and we've cited cases, of course, and in fact

18  the State Court case was considering sanctioning them for their

19  failure to release this document.  I just don't think that the

20  advice of counsel defense can get past those facts.

21          THE COURT:  Okay.  Thank you.  Mr. Hauf, how about

22  that?  This strikes me -- hey, I didn't really know, I relied

23  on the advice of counsel and not withdrawing the lis pendens

24  when I was under a court order to do so and I lost the case.

25  Wouldn't that have been a perfect defense to raise to the suit

1  for damages in State Court?  And yet it doesn't seem to have

2  been raised.  What do you know about that?

3       MR. HAUF:  Well, based on what my client represented

4  to me, it was something that was argued in trial.  I do think

5  one of the issues here is I reviewed the summary judgment

6  motion, specifically the A23(a)(6) (sic) claims.  I looked back

7  at the Supreme Court case in Geiger and really went through the

8  cases that you, yourself had told us about and looked at what

9  the elements were and what trial courts had found and how

10  juries ruled.  I think what I always look at first of all is

11  although we're supposed to be zealous advocates, we have to

12  always satisfy that doubt in the back of our mind, are they --

13  is the other side possibly right.

14       THE COURT:  All right.  When you look at the record,

15  it looked to you like this issue had been raised at the trial

16  before the Superior Court judge?

17       MR. HAUF:  That's what my client said.  I --

18       THE COURT:  If that's accurate, then your client lost

19  on that factual issue; did they not?

20       MR. HAUF:  They would have.  I guess one of the

21  things I was looking at in the statute though, is I don't

22  necessarily know if that matters.  And what I mean by that is

23  throughout all the cases cited, be it Geiger, be it Van Damme,

24  which is always interesting to look at the procedural

25  background and the story behind all those cases.

1       Van Damme, I mentioned specifically because the one

2   interesting thing about that case -- and the Plaintiff cites

3   that case -- in State Court, the defendant was pro per and at

4   one point the Court found -- the Court in all these cases,

5   specifically there was a finding of some sort of malicious

6   intent separate.  They found malice in that particular case and

7   at one point the State Court ruled that there was a long

8   procedural battle, but at one point the Defendant actually

9   proceeded to spray paint the plaintiff and the Court said that

10  one of the persuasive elements of finding malice was the

11  interesting glint in his eye, so they described that at trial.

12       And when I looked at all the other cases, even one of

13  the cases that we cite in which the Court remanded a finding of

14  summary judgment based on the fact that the jury instructions

15  allowed the jury to either make a negligent determination or a

16  malice determination.  And so all these cases where preclusion

17  is used, show that the Court specifically found that there was

18  an intent.  And when I backed up and when I -- when I went

19  through the procedural history and looked at what I think is

20  the controlling Supreme Court case, the Court always made a

21  distinction between intentional acts, which we're not disputing

22  that there was an intentional act with regard to the recording

23  and the lis pendens.  And that intentional acts, specifically

24  with the intent to harm, tantamount to an intentional tort,

25  which is why in other states, like Nevada, their slander of

1  title statutes are actually considered intentional torts which

2  require a finding -- and additional finding of intent to harm.

3          THE COURT:  I don't understand counsel, the delay

4  here.  I understand that people can be -- feel strongly in

5  their cause.  I understand that people can be upset when they

6  don't win at court, but people also have to operate as

7  reasonable people. Now, the Andersons were told, you lose.  The

8  Andersons were told, you've got ten days, court order, to

9  remove the lis pendens, didn't do it.  The Andersons, through

10  counsel, got letters from the creditor's counsel saying,

11  release them right now or we're going to come get you and they

12  didn't do it.  What were they waiting on?  What were they

13  waiting on over time -- all the time this improper cloud on the

14  title was sitting on somebody else's property?  What were

15  they -- what did they think they were accomplishing by all of

16  this delay?

17          MR. HAUF:  As I understand it, Your Honor, and their

18  counsel, their State Court counsel wrote a reply that was

19  attached to the OSC and basically advised that they were -- the

20  counsel advised them not to lift -- or not to lift the lis

21  pendens based on the fact that they were seeking the -- or

22  reviewing the possibility of appealing the order.  And so --

23          THE COURT:  Isn't that -- well, isn't that usually

24  called stay pending appeal and don't you have to file a

25  pleading for that?  You don't just grant yourself a stay

1 pending appeal, do you?

2        MR. HAUF:  Correct.  And I think that the issue is --

3 I do want to point out to Your Honor that in this case already,

4 there was -- there is a malpractice claim being litigating.

5 Not against this attorney, but the previous attorney who had

6 represented them in the case and the trustee is litigating that

7 action.  And so one of the issues here with regard to -- and I

8 do want to set the stage as far as how long did they -- they

9 didn't release the lis pendens within the ten day period the

10 Court ordered, however, this isn't a situation where the lis

11 pendens stayed on for seven or eight months or months at a

12 time.  The lis pendens remained in place from April, when the

13 Court issued the order, until July, and so --

14        THE COURT:  Well, that -- that was an argument, I

15 think best addressed and probably was addressed to the State

16 Court and the State Court ruled on that.  It liquidated the

17 damages and it said the damages were X on this case, as I

18 recall, a heck of a lot of money.  So obviously the State Court

19 felt that a lot of -- that that lis pendens improperly stayed

20 on on someone else's property for far too long, because the

21 Andersons really got whopped in State Court, did they not?

22        MR. HAUF:  Well, lis pendens, I'll tell you that lis

23 pendens actions are disturbing to me, in general.  I don't know

24 if I would ever use one, necessarily, just because of the

25 risks.

1          THE COURT:  Hold that thought.  That's a good

2     thought.

3          MR. HAUF:  Yeah, but the issue is that they did so

4     under the advice of counsel and the damages were treble.  So

5     they did get -- they did experience the issue of treble

6     damages.

7          THE COURT:  All right.  Well, again I don't see

8     how -- if the issue that factually -- the factual issue that

9     they relied on counsel's advice and they still were found to

10    have violated the statute, I don't see how that argument helps

11    your client here, because it sounds just like it's a rejected

12    factual defense and you're now bound by the judgment.  How does

13    that help the Andersons here?

14         MR. HAUF:  I think what that shows is that when I

15    laid out what were the other cases and what the Court's found

16    in other situations when they found malice, I don't believe the

17    Arizona statute requires it -- it lists willful, and willful as

18    the Supreme Court defines, can simply be an intentional act.

19    Willful under 523(a)(6), the Court had -- and the Court

20    interpreted that Congress wanted something more, which is I

21    think that any intentional -- and we talked about the lis

22    pendens.  The difference is since our statement does not

23    consider a lis pendens an intentional tort as other states have

24    selected to do, there's never a requirement that a mens rea

25    element be debated.

1          THE COURT:  All right.  So your point is the mens rea

2   did not have to be -- was not required to be litigated in State

3   Court, hence under Arizona issue preclusion rules, it didn't

4   have to be litigated and it can't -- this issue, I was acting

5   under the advice of counsel, I didn't really know what was

6   going on, this issue is preserved for this bankruptcy

7   proceeding because mens rea is absolutely required here?  Is

8   that the argument?

9          MR. HAUF:  That's my argument and I --

10          THE COURT:  All right.  Got it.

11          MR. HAUF:  And -- well, that I think is the binding

12   principle that we're basically looking at, because one of the

13   issues -- and I brought this up in my motion.  I think it's

14   salient to bring here, is that the whole purpose of bankruptcy

15   is to give a fresh start.  And so Congress decided there were

16   certain acts that would prevent that from occurring and so

17   preclusion has always been something I think that the Courts

18   have weighed very judicially when they use it.  And so the mens

19   rea element to me was the one thing I latched onto in this

20   whole proceeding, which was, I don't think it was ever -- I

21   don't think the statute required it to be found liable.  And I

22   think that's why that defense in the State Court wouldn't have

23   mattered, because I don't think mens rea was ever litigated, so

24   it was preserved for our court.  It isolates what we have to

25   litigate, specifically as a factual issue, because we do have

1 some undisputed facts. But what we are disputing is that the

2 circumstantial evidence, and specifically the findings of the

3 State Court orders, including an order written by our own Judge

4 Ballinger, never specifically go towards the mens rea element.

5         THE COURT:  Okay.  I'll yell at him about that later.

6         MR. HAUF:  Don't tell him I told you though.

7         THE COURT:  All right, so your clients are suing a

8 former lawyer, but you took them on as clients, nonetheless.

9 Is that what's happening here?

10         MR. HAUF:  The former lawyer is now deceased.

11         THE COURT:  Okay.

12         MR. HAUF:  So, I --

13         THE COURT:  That doesn't mean he was wrong though.

14         MR. HAUF:  Well, they found -- there was some

15 discussion that the former lawyer may have advised them that

16 based on what occurred they should sue the --

17         THE COURT:  Okay.

18         MR. HAUF:  -- the insurance companies.

19         THE COURT:  Okay.  Got it.  Thank you.

20         MR. HAUF:  Thank you.

21         THE COURT:  All right.  Let's give the Movant the

22 last word here, briefly, if you please counsel.

23         MR. COSPER:  Absolutely, thank you Your Honor and I

24 will be brief, first with respect to that -- the malpractice

25 lawsuit that's currently pending.  I think it's important --

1 and I do point this out in our documents that it has nothing to

2 do with the release of lis pendens.

3       THE COURT: I agree. I was just fooling around with

4 Mr. Hauf.

5       MR. COSPER: Absolutely. And then with respect to

6 this -- the mens rea element under the Arizona Slander of Title

7 Statute, there's two subsections in that statute where

8 liability can be imposed. There's subsection (a), which

9 includes some different language. It says when a person knows

10 or has reason to know. Subsection (c), which is the one we've

11 moved for nondischargeability under, is specifically that the

12 Debtor knew. That's a pretty big distinction and I think that

13 it satisfies the mens rea element that would be required for a

14 willful injury. And I think that that's borne out by the case

15 actually cited by the Andersons, the Gerard case, which talks

16 about a Wisconsin statute that's very similar to the Arizona

17 statute, but it's similar to subsection (a) and it includes in

18 it, the or had reason to know element.

19       In that case, the jury didn't specify whether the

20 Debtor knew or had reason to know in its verdict and so the

21 Court of Appeals remanded for determination of that specific

22 issue. What we have here is different though. We have

23 liability under a subsection where it is conclusively

24 established that the Debtor knew that the document was

25 groundless.

**AVTranz**
www.avtranz.com · (800) 257-0885
Case 2:14-ap-00927-GBN   Doc 36   Filed 11/13/15   Entered 11/13/15 10:05:59   Desc
Main Document    Page 16 of 33

1          THE COURT:  All right.  So the argument, the

2    creditor's argument is that under this particular statute

3    subsection under which liability was found by the State Court

4    as a matter of issue preclusion, actual knowledge is required

5    and nonetheless, liability was imposed.  At the same time, your

6    best understanding of the record is this issue I relied on

7    counsel, I didn't really know what was going on, this issue was

8    not raised before the Superior Court?

9          MR. COSPER:  Well, it was not raised in the summary

10   judgment briefing on liability under this section and we've

11   attached all the pleadings, the motions and papers for that --

12   the liability decision.  There was testimony at trial on

13   damages where the Andersons did say that they relied on their

14   counsel, that's absolutely true.

15         THE COURT:  Okay, but that was the damages

16   calculation.  You contend that was not the liability fight?

17         MR. COSPER:  Well, that's my understanding, yes.  I

18   was not involved in the trial.

19         THE COURT:  Okay.

20         MR. COSPER:  Thank you, Your Honor.

21         THE COURT:  All right.  I need to make a ruling here.

22   I'm going to do so orally.  I'm going to take a long time, so

23   I'll apologize in advance for how long it takes, but you know

24   what, you have presented a very intricate issue by the papers

25   here.  Anyone who wishes a complete copy of my ruling may

1    obtain it by ordering a transcript of this hearing.

2            Here, the Plaintiff/Movant asserts entitlement to

3    summary judgment pursuant to 11 U.S.C. § 523(a)(6) for two

4    reasons.  First, under issue preclusion, Debtors are barred

5    from relitigating issues already decided by the State Court.

6            Second, even without issue preclusion, the undisputed

7    facts establish liability under 523(a)(6).  This section

8    provides in part a discharge does not discharge an individual

9    from any debt for willful and malicious injury by Debtor to

10   another or to the property of another.  We've been talking

11   about what the Supreme Court has to say about this and what

12   we've been talking about is the Geiger decision, 118 S.C.R.

13   974, with the very important language from the decision at

14   pages 977 to 78.  Geiger held the word willful modifies the

15   word injury indicating nondischargeability takes a deliberate

16   or intentional injury, not merely a deliberate or intentional

17   act that leads to injury.  Debts arising from recklessly or

18   negligently inflicted injuries do not fall within 523(a)(6).

19   Section (a)(6) triggers intentional torts as distinguished from

20   negligent or reckless torts.  Intentional torts generally

21   require the actor intend the consequences of an act, not simply

22   the act itself.

23           Standard of proof in this action is a preponderance

24   of the evidence.  See the Ninth Circuit's Sicroff decision, 401

25   F.3d, 1101.  For § 523(a)(6) to apply the actor must intend the

1 consequences of the act, not simply the act itself. Both

2 willfulness and maliciousness must be proven.

3       523(a)(6)'s willful injury requirement is met only

4 when the Debtor has a subjective motive to inflict injury or

5 Debtor believes injury is substantially certain to result from

6 his own conduct. Now the Debtor is charged with the knowledge

7 of the natural consequences of his action. In this case,

8 natural consequences of putting a lis pendens notice on someone

9 else's property. The Bankruptcy Court may consider

10 circumstantial evidence that tends to establish what the Debtor

11 must have actually known when taking the action. This is

12 provided for by the Ninth Circuit in its Ormsby decision 591

13 F.3d, 1199 at 1206.

14       Now, the malicious injury requirement is separate

15 from the willful injury requirement. A malicious injury

16 involves a wrongful act done intentionally which necessarily

17 causes injury and is done without just cause or excuse. Again,

18 malice may be inferred based on the nature of the wrongful act.

19 To infer malice, however, it must be established that the act

20 was willful, so willfulness is beyond a doubt, a very major

21 component of liability. See the Ormsby decision at page 1207.

22       Now, one of the ways the Plaintiff is coming at the

23 Defendants is through issue preclusion prohibits re-litigation

24 of issues that have been adjudicated in a prior action. The

25 party asserting issue preclusion bears the burden of proof as

1    to all elements and must introduce a sufficient record to

2    reveal the controlling facts and the exact issues litigated.

3    Comedy requires that federal courts give prior state judgments

4    the same preclusive effect as the courts of the state that

5    rendered the judgment.  A federal court must determine the

6    preclusive effect of a prior state judgment by applying the

7    issue preclusion law of the state of that court.

8            Under -- obviously, in this case, it's Arizona law.

9    The elements of issue preclusion in Arizona are, the issue or

10   fact to be litigated was actually litigated, a final judgment

11   was entered and the party against whom the doctrine is to be

12   invoked had a full opportunity to litigate the matter and

13   actually did litigate it and such issue or fact was essential

14   to the prior judgment.  See the Ninth Circuit Child decision --

15   actually it's the Ninth Circuit Bankruptcy Appellate Panel

16   Child decision. 486 BK Reports 163 at 172 to 173.  If in the

17   course of adjudicating a state law question, a state court

18   should determine factual issue using standards identical to

19   those of § 523 then collateral estoppel or issue preclusion

20   would bar re-litigation of those issues in bankruptcy court.

21   See the Ninth Circuit Sasson decision, 424 F.3d 864 at 872.

22           So, we got to look at the state court litigation.  I

23   get most of my facts from the state court of appeals ruling in

24   CWB Holdings, LLC versus Anderson, reported at 2011 Westlaw

25   6210526 in particular pages 1 through 3.  The facts include

1  that in 2005 Mr. Anderson approached a Mr. Debtman (phonetic)

2  about purchasing real property in a commercial building in

3  Scottsdale. The Debtmans submitted to the Andersons a real

4  estate disclosure and election, a commercial seller's property

5  disclosure statement and a commercial real estate purchase

6  contract. The Andersons assert that they reached an oral

7  agreement with the Debtmans that the earnest money would equal

8  $10,000 as opposed to the $50,000 in the contract. January

9  2006, however, CWB entered into a binding purchase contract

10  with the Debtmans to purchase the property for $660,000. The

11  Andersons then filed a notice of lis pendens against the

12  property in February 8, 2006. Thereafter, the property was

13  conveyed by deed to CWB on February 16th, 2006 with this cloud

14  of title on it. The Andersons filed a complaint against the

15  Debtmans for specific performance. The Andersons conceded in

16  the complaint that the Debtmans had not signed the purchase

17  contract. The Andersons filed an amended complaint

18  substituting an entity, 8727 LLC as the named plaintiff in

19  place of the Andersons personally.

20          In January, 2007 the trial court dismissed the case

21  without prejudice for lack of prosecution. 8727 moved to

22  reinstate the case and the case was reinstated in May of '07.

23  CWB requested that the Andersons execute a quick claim deed on

24  February 16th, 2006 but the Andersons did not comply. In

25  September of 2007 CWB filed a complaint against the Andersons

1  for wrongful recordation and quiet title.  CWB argued that they

2  were entitled to damages including treble the actual damages

3  under A.R.S. § 33-420.

4         The Andersons filed a second notice of lis pendens in

5  October of 2007.  The Debtmans moved for summary judgment in

6  November of 2007 arguing the Andersons and 8727, LLC could not

7  establish the existence of a contract with the Debtmans.  The

8  trial court granted that motion.  The Court found the

9  collective writings between the parties which included proposed

10  contracts, letters and emails did not reflect that an agreement

11  existed in this case and no agreement or meeting of the minds

12  and all material terms ever occurred.  The trial court

13  consolidated the various litigation that was pending.  In a

14  formal judgment filed on April 1st of 2008, the Court granted

15  attorneys fees in favor of the Debtmans and CWB and ordered the

16  Andersons to remove all lis pendens against the property within

17  ten days.  If only they had complied with that demand but,

18  apparently, they didn't.

19         In July 2008 the Court set a hearing date for August

20  2008 for the Andersons and 8727, LLC to show cause why the lis

21  pendens had not yet been removed.  The Anderson and 8727, LLC

22  separately filed releases of lis pendens on July 31st, 2008.

23  They also filed a notice of appeal challenging the summary

24  judgment entered in the consolidated Superior Court case.

25         There's further fact finding by our excellent State

1  Appellate Court including that in December of 2008 CWB filed a

2  motion for partial summary judgment for wrongful recordation

3  for lis pendens.  CWB argued that the trial court's grant of

4  summary judgment in January 2008 and the Court's finding that

5  no agreement existed between the parties supported its argument

6  that no reasonable person could conclude that a purchase

7  contract existed between the Debtmans and the Andersons or

8  8727, LLC.  And the Andersons like all other reasonable people

9  must have known and certainly had reason to know lis pendens

10 were groundless, contained a false claim or were otherwise

11 invalid.  The trial court held oral argument and granted CWB's

12 motion for partial summary judgment establishing liability for

13 wrongful recordation of lis pendens and denied the Andersons

14 cross motion.  Damages, however, remained to be determined.

15         This Court, this Court being the State Court of

16 Appeals ruled on the first appeal.  This Court vacated the

17 judgment as to the Andersons, noting the Andersons had

18 previously amended the complaint to reflect only 8727, LLC as

19 plaintiff and this court concluded the Andersons, personally,

20 were not subject to the judgment.

21         The question of CWB's actual damages was tried to a

22 jury and the jury found CWB's actual damages to be $180,000.

23 But the State court awarded CWB $540,000 as treble, the actual

24 damages, determined by the jury, pursuant to its authority

25 under A.R.S. § 33-420A and C.  The Andersons timely appealed.

1  I've been reading from the Court of Appeals CWB Holdings case

2  at Page 4.

3          In entering judgment in favor of CWB Holdings, the

4  State court made it clear CWB is the lawful owner of the real

5  property, the plaintiffs have no right, title or interest in

6  the property.  The Court quashes, it renders null and void any

7  and all lis pendens recorded by plaintiffs.  Notwithstanding

8  the foregoing, the Court orders plaintiffs to remove any and

9  all lis pendens any of them have filed against the property

10 within 10 days of the judgment.  See the Movant's Exhibit 3.1

11 at Exhibit 10.  This judgment is dated March 27th of 2008.

12         Time passes and then on April 8th of 2008 the

13 creditors counsel wrote Debtors counsel indicating he assumed

14 lis pendens had been released and requested copies.  See

15 Exhibit 11.  On June 20, 2008 creditor's counsel writing to

16 debtor's counsel indicated in part,

17         "The Court denies your client's motion to amend

18         the judgment.  There's no further reason for

19         your clients not to comply with the March 27th,

20         2007 judgment.  We will accept $58,056.53 as

21         satisfaction of judgment if received no later

22         than June 27th, 2008.  Additionally, the

23         judgment required your clients to remove any all

24         lis pendens filed against the subject property

25         within 10 days of the entry of the judgment.

1           This should have been done by April 7th, your

2           clients have refused to do this.  At the very

3           least two separate notices of lis pendens are

4           still recorded.  By June 27th, 2008 please

5           release these and any other lis pendens your

6           clients have filed and send us copies."

7 I've been reading from Exhibit 12 attached to Movant's papers.

8       On July 15th, 2008 the State Court Judge issued an

9 order to show cause why the defendants, now the Debtors here

10 and 8727 should not be held in contempt for failure to remove

11 all lis pendens.  See the OSC at Exhibit 13.

12       Just prior to the scheduled hearing the lis pendens

13 were released.  The Appellate Court in affirming summary

14 judgment against the Debtors noted in part at Page 7, "We have

15 already found the lis pendens to be groundless due to a lack of

16 contract between the Andersons and the Debtmans."  I think this

17 is pretty important language.  The Court continued,

18           "Even if the Andersons were not liable, the CWB

19           would be immediately after the February 2006

20           letter or the May 2007 letter, they were liable

21           to release the lis pendens following the trial

22           court's April 2008 order."

23       The sole issue addressed on appeal was whether or not

24 the Superior Court erred by adding the Andersons as plaintiffs.

25 The issue of whether a contract existed was not addressed on

1  appeal, therefore the Andersons should have released the lis

2  pendens within the 10 days ordered.  Summary judgment was

3  appropriate in that matter.

4       The findings continued, "The 2006 lis pendens was

5  groundless and for the same reasons we conclude the 2007 lis

6  pendens was also groundless.  Summary judgment was

7  appropriate."

8       The Court continued,

9       "The record is clear that the Court ordered on

10      April 1st, 2008, the Andersons remove all lis

11      pendens against the property within 10 days.

12      The Andersons failed to comply, the Court issued

13      an order to show cause in July 2008, the

14      Andersons finally filed a release of lis pendens

15      on July 31st, 2008.  Summary judgment was

16      appropriate on this issue."

17  I've been reading, again, from the CWB Holdings ruling at Page

18  7.

19      Under these facts I have little difficulty in

20  concluding that the Plaintiff has established sufficient

21  evidence here for a finding of summary judgment, but there's a

22  nagging problem here that's loose and that is the advice of

23  counsel defense.  Again, the Plaintiff has established a strong

24  record for granting summary judgment, but as noted by the State

25  Court of Appeals and interpreting A.R.S. 33-420 liability is

1    imposed only if the person causing the filing of the invalid

2    document knows or has reason to know the document is invalid,

3    thereby mandating the finding of scienter on the part of the

4    person causing the filing.

5              "Although an attorney is generally authorized to

6              act on behalf of a client, the lawyer's

7              knowledge as to the groundlessness of the

8              document filed could not be imputed to the

9              client under the statute when the client was not

10             aware the lawyer had filed the lis pendens."

11   I've been reading from another Arizona Court of Appeals case,

12   Pence versus Glacy, 87 P.3d 839 at 841.

13             But, there are exceptions to the advice of counsel

14   defense as well.  An earlier case in Arizona found that Hatch,

15   apparently the defendant in that case, possessed the requisite

16   knowledge.  The Arizona Supreme Court has held that damages may

17   not be assessed against a client pursuant to A.R.S. 33-420A if

18   an attorney files a lis pendens without the client's knowledge

19   or consent.

20             "This action, however, the Court went on, is

21             distinguishable from Wyatt.  Hatch was made

22             aware that his counsel had filed a lis pendens,

23             because knowledge on the part of counsel would

24             be imputed to Hatch under these circumstances it

25             would be necessary to determine whether counsel

1          had the requisite knowledge.  Even assuming the

2          attorney had a good faith belief in the

3          propriety of recording the lis pendens we

4          believe Hatch failed to prove the attorney did

5          not have reason to know the filing was improper.

6          Reason to know means the actor has knowledge of

7          facts from which a reasonable man of ordinary

8          intelligence would either infer the existence of

9          the fact or would regard its existence as so

10         highly probable that his conduct would be

11         predicated upon the assumption that the fact did

12         exist."

13    I've been reading from the Hatch case from the State Court of

14    Appeals, Hatch Companies Contracting, 826 P.2d 1179 to 1184 to

15    85.

16         Here in an attempt to avoid summary judgment and

17    raise a dispute of material fact, the defendant debtors assert

18    they relied on counsel's advice concerning release of the lis

19    pendens.  This is what they have to say at the debtors'

20    statement of fact, number 6:

21         "Upon advice of counsel, we did not release the

22         notice of lis pendens based upon his

23         recommendation that we appeal the judgment

24         rendered against both ourselves and 8727."

25         The Movant argues that this was not raised in the

1  State Court action, perhaps so and perhaps a waiver argument

2  would ordinarily obtain but we can't lose sight of the fact

3  that this is a 523(a)(6) action and the Plaintiff must

4  establish whether the Debtors acted willfully and maliciously

5  before a non-dischargeable judgment can be entered and I think

6  arguing that something was waived is not meeting that standard

7  necessarily, at least when the motion is opposed.

8          As noted by the Bankruptcy Appellate Panel for the

9  Sixth Circuit, the majority of cases have held reliance on the

10  advice of counsel is no defense to § 523(a)(6).  Even cases

11  that have allowed this defense have limited it to circumstances

12  where the reliance was reasonable and there was evidence the

13  debtor acted in good faith and fully disclosing all facts the

14  his counsel.  See the Sixth Circuit BAP's Sarff decision, 242

15  B.R. 620 at 629.

16          Sarff explained -- the magistrate, I think they're

17  referring to the trial court noted Sarff relied on the poor

18  advice of counsel when he continued to violate the injunction

19  but the magistrate did not find this reliance was in good

20  faith.  As such the panel affirmed the bankruptcy court

21  applying the state court findings to determine

22  nondischargability.

23          Here, as noted it does not appear, as far as I can

24  see, that this issue was raised in state court, although one

25  counsel indicates it might have been.  A more recent decision

1  flushed out what the advice of counsel defense boils down to

2  and I think it should be considered even though it's from out

3  of circuit.  It's In Re: Gotwald, 488 B.R. 854 at 872 from the

4  Eastern District of Pennsylvania.  Interestingly, Gotwald says

5  this is not actually a defense, rather it is a species of

6  evidence that is offered to negate the requisite element of

7  intent under 523(a)(6).  Well, funny, but I would call that a

8  defense.  Anyway, this is what the Pennsylvania court said.

9       In the last analysis, the issue is whether adding

10  alleged reliance on counsel leaves the trier of fact unable to

11  conclude by a preponderance of the evidence that the debtor

12  acted with a requisite intent.  The burden of production of

13  evidence in support of the defense rests with the debtor.

14  However, the ultimate burden of persuasion with respect to the

15  elements under 523(a)(6) remain with the plaintiff at all

16  times.  Courts have described the advice of counsel defense is

17  requiring that the debtor establish, and I think this is

18  important, the debtor must establish one, all relevant facts

19  were fully and fairly communicated to legal counsel, two,

20  debtor acted upon counsel's legal advice and three, the

21  reliance was reasonable in the existing circumstances.

22       The Court further explained the third prong of the

23  test has necessary elements to it, those necessary elements

24  are, did counsel give the advice?  Was the advice legal in

25  nature?  Did the debtor rely upon the advice of counsel?  And

1   did the reliance occur while the debtor was acting in good

2   faith?  If all of these elements are met, the scienter

3   requirement of § 523(a)(6) is negated.  <u>See</u> <u>Gotwald</u> at page

4   873.  There is support for this defense within the Ninth

5   Circuit in dealing with a 727(a)(2)(a) action.  In that case

6   the Ninth Circuit noted generally, a debtor who acts in

7   reliance on the advice of his attorney lacks the intent

8   required to deny him a discharge.  However, debtor's reliance

9   must be in good faith.  I've been reading from the <u>Adeeb</u>

10  decision, 787 F.2d. 1339 at 1343.

11          At this point I'm going to allow the -- while I'm

12  going to grant summary judgment -- partial summary judgment on

13  all issues, except the scienter issue under (a)(6), the debtors

14  are going to be given an opportunity to refute scienter under

15  (a)(6) and both as -- to determine whether or not this major

16  judgment is going to be non-dischargeable. Let me be as clear

17  as I know how to be.  I don't know how the Andersons are going

18  to be successful, but they raised this defense, that's the only

19  defense left to them in this case.  So -- and this is a factual

20  matter, it will require some sort of evidentiary hearing and

21  the debtors will have all the burden of going forward with that

22  evidentiary hearing.

23          This is what I'm going to do, we're going to set a

24  status hearing in about 30 days.  In that period what the

25  debtors need to accomplish is this, they need to formally waive

1  the attorney client privilege with the former attorney that

2  they contend gave them the advice that they acted upon and

3  number 2, they may have to make arrangements for that attorney

4  to be a witness at this trial. I want to hear personally, not

5  just from Mr. and Mrs. Anderson, but I want to hear personally

6  from that former attorney as well in order to evaluate the

7  defense.  If the Anderson's can't accomplish this, if they

8  can't present the attorneys testimony, hopefully favorable to

9  them, if it's just down to their self-serving testimony, which

10 should have been raised in the state court issue, I'm not at

11 all confident they're going to prevail on this matter.  We'll

12 know that in about 30 days.

13         We're not going to have an evidentiary hearing then,

14 this is just a status hearing to see if we're ready for an

15 evidentiary hearing.  We'll have, essentially, three witnesses,

16 the Andersons and the attorney and any relevant documents the

17 debtors think would be useful to introduce into evidence.  And

18 then we'll talk about how long a evidentiary hearing will be

19 required and then I'll set it.  Could we have a status hearing

20 set for this adversary, about 30 days and, you know, we can set

21 this at a regular status hearing cattle call.

22         THE CLERK:  December 15th at 9:30.

23         THE COURT:  December 15th at 9:30 we'll pick this

24 matter up on a status hearing and see if, indeed, the Andersons

25 are ready to go forward with their evidentiary hearing.  If

1   they are, I'll set it.  Anything else while we're together this

2   morning?  Good day.

3          MR. HAUF:  Thank you, Your Honor.

4          THE COURT:  We adjourn until 1:30.

5      (Proceedings concluded)

6

7

8

9      I certify that the foregoing is a correct transcript from

10  the record of proceedings in the above-entitled matter.

11

12  Dated: November 12, 2015

13                                          AVTranz, Inc.
                                            7227 N. 16th Street #207
                                            Phoenix, AZ  85020

14

15

16

17

18

19

20

21

22

23

24

25